UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

TODD SCHLIFSTEIN,

                    Defendant.

18 Cr. 217 (KMW)

---

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF TODD SCHLIFSTEIN'S
MOTION FOR COMPASSIONATE RELEASE**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     BACKGROUND ...........................................................................................2

      A.      Dr. Schlifstein's Conviction, Incarceration, and Scheduled Release......................2

      B.      The COVID-19 Pandemic.......................................................................3

      C.      Conditions of Confinement, Including at USP Lewisburg .................................5

      D.      Dr. Schlifstein's Significant Medical Issues ...........................................8

      E.      Dr. Schlifstein's Application to the BOP...............................................12

ARGUMENT ..........................................................................................................12

I.      THIS COURT SHOULD EXERCISE ITS EXPANSIVE AUTHORITY UNDER
        THE FIRST STEP ACT TO REDUCE DR. SCHLIFSTEIN'S SENTENCE..................12

II.     DR. SCHLIFSTEIN HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES
        UNDER 18 U.S.C. § 3582(C)(1)(A) .................................................................15

III.    "EXTRAORDINARY AND COMPELLING" REASONS WARRANT A
        REDUCTION AND MODIFICATION IN DR. SCHLIFSTEIN'S SENTENCE
        TO HOME CONFINEMENT..........................................................................15

CONCLUSION.......................................................................................................18

# TABLE OF AUTHORITIES

**Page**

*United States v. Campagna*,
　16 Cr. 78(LGS), 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) ........................................ 14, 17

*United States v. D. Hernandez*,
　18 Cr. 834-04(PAE), 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020) ........................................ 17

*United States v. Dana*,
　14 Cr. 405(JMF) (S.D.N.Y. Mar. 31, 2020) ........................................................................ 14

*United States v. Gross*,
　15 Cr. 769(AJN), 2020 WL 1673244 (S.D.N.Y. Apr. 6, 2020) ............................................ 11

*United States v. Kataev*,
　16 Cr. 00763 (LGS) 2020 WL 1862685 (S.D.N.Y. Apr. 14, 2020) ...................................... 14

*United States v. Marin*,
　15 Cr. 252(PKC) (E.D.N.Y. Mar. 30, 2020) ...................................................................... 14

*United States v. Muniz*,
　09 Cr. 0199(KPE), 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020) ........................................ 17

*United States v. Nkanga*,
　18 Cr. 713(JMF) (S.D.N.Y. Mar. 31, 2020) .......................................................................... 6

*United States v. P. Hernandez*,
　19 Cr. 169 (VM), 2020 WL 1503106 (S.D.N.Y. Mar. 30, 2020) .......................................... 17

*United States v. Pabon*,
　17 Cr. 165-1(ABB), 2020 WL 2112265 (E.D. Pa. May 4, 2020) ...................................... 8, 17

*United States v. Perez*,
　17 Cr. 513(AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) .............................................. 14

*United States v. Powell*,
　94 Cr. 0316(ESH) (D.D.C. Mar. 24, 2020) .......................................................................... 11

*United States v. Redd*,
　97 Cr. 06(AJT), 2020 WL 1248493 (E.D. Va. Mar. 16, 2020) .............................................. 13

*United States v. Resnick*,
   14 Cr. 810(CM), 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020)...............................14

*United States v. Scparta*,
   18 Cr. 578(AJN), 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020) ...........................10

*United States v. Salvagno*,
   02 Cr. 00051(LEK) (N.D.N.Y. Apr. 23, 2020)........................................................7

*United States v. Skelos*,
   15 Cr. 317 (KMW), 2020 WL 1847558 (S.D.N.Y. Apr. 12, 2020)..........................8

*United States v. Smith*,
   12 Cr. 133 (JFK), 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020) ..........................10

*United States v. Stephens*,
   15 Cr. 95(AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020). .............................6

## Rules / Statutes

18 U.S.C. § 371 ............................................................................................................2

18 U.S.C. § 3582 .............................................................................................1, 13, 15

18 U.S.C. § 3621 ............................................................................................................3

18 U.S.C. § 3624(c) ................................................................................................2, 14

CARES Act § 12003(b)(2)....................................................................................14, 15

Coronavirus Aid, Relief, and Economic Security (CARES) Act 2020, Pub. L. No. 116-136,
   116th Cong., Title VI § 12003 (2020) ...............................................................2

Section 319 of the Public Health Service Act, 42 U.S.C. § 247(d) ..............................4

U.S.S.G. § 1B1.13 Application Note 1 (2018) ..........................................................13

## Other Authorities

Joseph A. Bick (2007), *Infection Control in Jails and Prisons. Clinical Infectious Diseases*, at
   https://academic.oup.com/cid/article/45/8/1047/344842 ...........................................6

CDC COVID-19 Guidance, available at https://www.cdc.gov/coronavirus/2019-
   ncov/hcp/underlying-conditions.html ...................................................................12

Serena Gordon, *Who's Most at Risk From Coronavirus,* Mar. 18, 2020,
https://www.usnews.com/news/health-news/articles/2020-03-18/whos-most-at-risk-from-
coronavirus .................................................................................................................... 11

Dr. Kelley Mingus, *Sleep Apnea May Increase Coronavirus Risk*, Mar. 16, 2020, *available at*
https://kelleymingus.com/2020/03/16/sleep-apnea-may-increase-coronavirus-risk/ ................ 9

Dr. Carl Rosenberg, *Coronavirus Concerns for Patients with Sleep Apnea*, Mar. 22, 2020,
*available at* https://www.sleephealthsolutionsohio.com/blog/coronavirus-sleep-apnea-cpap-
therapy/ .................................................................................................................... 9, 10

*Sleep Centers of Middle Tennessee Releases Guidelines For CPAP Use During COVID-19
Outbreak In The United States*, Mar. 15, 2020 *available at*
https://sleepcenterinfo.com/blog/guidelines-for-cpap-use-during-covid-19-outbreak-in-the-
united-states/ .................................................................................................................... 10

Kenny Walter, *Concern over Sleep Apnea and Coronavirus Transmission*, Mar. 24, 2020,
*available at* https://www.mdmag.com/medical-news/sleep-apnea-treatment-coronavirus-
droplets .................................................................................................................... 10

## I.    PRELIMINARY STATEMENT

Todd Schlifstein, through undersigned counsel, respectfully moves this Court under 18 U.S.C. § 3582(c)(1)(A) to modify his sentence and immediately release him to home confinement and a period of supervised release.  This Court sentenced Dr. Schlifstein, a first-time, non-violent offender with significant medical issues, to a 24-month sentence on October 28, 2019, which he began serving on February 24, 2020.  Although he is not projected to be released until November 6, 2021, the unprecedented threat of COVID-19 now poses a life-threatening risk to Dr. Schlifstein that could result in a death sentence if he is not released to home confinement immediately.

COVID-19 thrives in densely packed populations, such as the U.S. Penitentiary ("USP") Lewisburg camp where Dr. Schlifstein is currently serving his sentence in Lewisburg, Pennsylvania.  There are legitimate concerns about USP Lewisburg's ability to properly quarantine inmates and staff members who transfer from other prisons overrun by the virus. Indeed, some 900 inmates were recently transferred to USP Lewisburg, which only further exacerbates Dr. Schlifstein's potential exposure.  Lewisburg has at least one confirmed case among staff at Lewisburg, and on May 5, 2020, an inmate was removed by ambulance with symptoms of COVID-19. Time is of the essence.

Allowing Dr. Schlifstein to finish out his sentence at home is the only prudent response to the extraordinary and compelling circumstances created by the novel coronavirus. Indeed, Attorney General William Barr and the United States Congress have both recently recognized that home confinement for low-risk prisoners is a priority to help minimize the rate of infection and risk from COVID-19. *See* "Memorandum for Director of Bureau of Prisons: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," Office of Attorney General, Mar. 26, 2020, https://www.justice.gov/file/1262731/download (prioritizing home

confinement and noting that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities"); Coronavirus Aid, Relief, and Economic Security (CARES) Act 2020, Pub. L. No. 116-136, 116th Cong., Title VI § 12003, pg. 634 (2020) (amending 18 U.S.C. § 3624 (c) to eliminate time limits on the use of home confinement for the duration of the COVID-19 crisis).

Before this motion was filed, on April 7, 2020, Dr. Schlifstein filed an administrative relief request with USP Lewisburg camp seeking compassionate release on the same grounds as submitted herein. Despite a note of acknowledgment from USP Lewisburg on April 15, 2020, 30 days have now elapsed and USP Lewisburg has yet to issue a decision of Dr. Schlifstein's administrative request.  Because of the urgency of the spread of COVID-19, we ask the Court to consider this motion on an expedited basis as each day brings additional risk to Dr. Schlifstein' health and perhaps even his life.

## II.    BACKGROUND

### A.    Dr. Schlifstein's Conviction, Incarceration, and Scheduled Release

On October 28, 2019, Dr. Schlifstein was sentenced to 24 months for a non-violent offense—one count of conspiracy to violate the Anti-Kickback Statute in violation of 18 U.S.C. § 371—based on his participation in the Insys Speaker program.  He self-surrendered and began serving that sentence on February 24, 2020 at the USP Lewisburg's satellite camp located in Lewisburg, Pennsylvania. His projected release date is November 6, 2021.

Dr. Schlifstein was a practicing doctor specializing in pain medication in New York City before his conviction.  Dr. Schlifstein suffered numerous collateral consequences as a result of conviction even before he began his incarceration—including that his medical license has been rendered inactive, his DEA license was returned, and his appointment as a lecturer at various

medical schools, and his board certifications were revoked.  He is deeply remorseful for his conduct, for which he continues to atone and which the Court observed at his sentencing in October 2019.

Neither the Court nor the Government deemed him a danger to the community.  As U.S. Probation noted in the Pre-Sentence Report ("PSR"), Dr. Schlifstein's "involvement in the instant offense appears uncharacteristic." PSR at 32.  Indeed, even at sentencing, the Court noted that Dr. Schlifstein 24-month sentence was based primarily on "general deterrence" because it is "what doctors in the future will take into account" before deciding whether to join a similar conspiracy, and not based on his actual danger to society.  Schlifstein Oct. 28 H'rg Tr.  He has been a model prisoner since his incarceration began and has used his time in prison so far to better himself and others.

Dr. Schlifstein is exactly the type of low-risk, non-violent offender who is well situated for home confinement. *See e.g.,* 18 U.S.C. § 3621(c)(1) ("The Bureau of Prisons shall, to the extent practicable, place prisoners *with lower risk levels and lower needs* on home confinement for the maximum amount of time permitted under this paragraph." (emphasis added)).

## B.    The COVID-19 Pandemic

As the Court is aware, the world is currently experiencing an unprecedented public health emergency as a result of the COVID-19 pandemic. COVID-19 is a viral respiratory illness caused by a novel coronavirus that was first identified in Hubei Province, China, in December 2019, and has since rapidly spread around the world.[1]  On March 13, 2020, the White House declared a national emergency, under Section 319 of the Public Health Service Act, 42 U.S.C. §

---

[1] *What you need to know about coronavirus disease 2019 (COVID-19), Ctr. for Disease Control and Prevention* (last visited May 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf.

247(d)).[2]  On March 16, 2020, the White House issued guidance recommending that, for the next eight weeks, gatherings of ten persons or more be canceled or postponed.[3]  On March 20, 2020, Governor Andrew Cuomo ordered 100 percent of all non-essential workers to remain home, effectively shuttering New York state's entire economy.[4]

As of May 6, 2020, the World Health Organization reported 3,588,773 confirmed global cases of COVID-19 and 247,503 deaths.[5] The coronavirus is also spreading exponentially, with the United States experiencing the highest rate of increase anywhere in the world and one-third of global daily death, according to the Financial Times:[6]



---

[2]  The White House, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* (Mar. 13, 2020), available at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[3]  Sheri Fink, *White House Takes New Line After Dire Report on Death Toll*, New York Times (Mar. 17, 2020), available at https://www.nytimes.com/2020/03/17/us/coronavirus-fatality-rate-white-house.html?action=click&module=Spotlight&pgtype=Homepage .

[4]  Keshia Clukey and Henry Goldman, *Cuomo Orders 100% of Nonessential N.Y.  Workforce to Stay Home*, Bloomberg News (Mar. 20, 2020), available at https://www.bloomberg.com/news/articles/2020-03-20/n-y-gov-cuomo-100-percent-of-workforce-must-stay-home.

[5]  *Coronavirus disease 2019 (COVID-19): Situation Report—107*, World Health Organization (May 6, 2020) https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200506covid-19-sitrep-107.pdf?sfvrsn=159c3dc_2

[6]  *Coronavirus tracked: the latest figures as countries fight to contain the pandemic*, Financial Times (last visited May 6, 2020), https://www.ft.com/content/a26fbf7e-48f8-11ea-aeb3-955839e06441

As of May 6, 2020, the Centers for Disease Control ("CDC") reported 1,193,813 confirmed cases of COVID-19 in the United States, with 70,802 deaths.[7] As of May 6, 2020, Pennsylvania's Department of Health confirmed 51,845 total cases, with 3,106 deaths.[8] These numbers may reflect a significant undercount as many jurisdictions are currently only testing targeted at-risk populations and front-line workers. The death toll and hospitalizations in New York, Pennsylvania, and nationwide only continue to increase.

### C.    Conditions of Confinement, Including at USP Lewisburg

Conditions of confinement create an ideal environment for the transmission of highly contagious diseases like COVID-19. Those detained in correctional facilities are at the highest risk. As Judge Furman recently noted:

> The country faces unprecedented challenges from the novel Coronavirus ('COVID-19') pandemic. Those detained in jails and prisons face particularly grave danger. Realistically, the best—perhaps the only—way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible.

*United States v. Nkanga*, 18 Cr. 713 (JMF) (S.D.N.Y. Mar. 31, 2020), ECF No. 87 at 1; *see also* Joseph A. Bick (2007), *Infection Control in Jails and Prisons. Clinical Infectious Diseases* 45(8):1047-1055, at https://academic.oup.com/cid/article/45/8/1047/344842 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"). As this Court has found a few weeks ago in the context of deciding to release a previously detained inmate on bail, "inmates may be at a

---

[7] *Coronavirus Disease 2019 (COVID-19), Cases in the US, Ctr. for Disease Control and Prevention* (last visited May 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/casesin-us.html
https://www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html
[8] *COVID-19 Data for Pennsylvania*, (last visited May 6, 2020)
https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx

heightened risk of contracting COVID-19 should an outbreak develop." *United States v. Stephens*, 15 Cr. 95(AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020).

Since that time, an outbreak of COVID-19 has developed in the federal prison system and continues to grow exponentially, as can be seen in the graphics below:





*See* https://federaldefendersny.org/ (last visited May 6, 2020). This is not surprising as hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is

contraband in jails and prisons because of its alcohol content.[9]  It is thus clear that COVID-19 poses a great risk to everyone, but even more so to those in the BOP's institutions.

Based on Bureau of Prisons' statistics as of May 6, 2020, which almost certainly are undercounting,[10] 2,066 federal inmates and 359 BOP staff have been confirmed with positive test results for COVID-19 nationwide.[11]  As one court recently summarized the problem, "Prisons are 'powder kegs for infection' and have allowed 'the COVID-19 virus [to] spread[] with uncommon and frightening speed,'" *United States v. Salvagno*, 02 Cr. 0051(LEK) (N.D.N.Y. Apr. 23, 2020), ECF No. 1166 at 8 (quoting *United States v. Skelos*, 15 Cr. 317, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020)).  The BOP has implemented modified operations "to mitigate the spread of COVID-19."[12] As part of these measures, the BOP represents that "inmate internal movement is suspended with limited exceptions."[13]

As to the specific penitentiary where Dr. Schlifstein is currently serving his sentence, USP Lewisburg, there are legitimate concerns about USP Lewisburg's ability to properly quarantine inmates and staff members who transfer from other prisons overrun by the virus.[14] USP Lewisburg holds 1,426 inmates, with 1,108 in the penitentiary and 318 at the camp where

---

[9]  Keri Blakinger and Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is Contraband?*, ABA Journal (March 13, 2020), available at https://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus.

[10]  Testing in BOP facilities is severely limited and the real numbers are likely far higher.  *See* Katie Park, Tom Meagher & Weihua Li, The Marshall Project, *Tracking the Spread of Coronavirus in Prisons*, April 24, 2020, https://www.themarshallproject.org/2020/04/24/tracking-the-spread-of-coronavirus-in-prisons  ("As startling as these figures are, they are almost certainly an undercount. While most prison systems are releasing information about the number of positive tests and prisoner deaths in their facilities, far less is known about how many people are being tested. Sixteen prison systems are not releasing information about how many prisoners they are testing, including the Federal Bureau of Prisons, which has seen several major outbreaks of coronavirus in its institutions.").

[11]  https://www.bop.gov/coronavirus/

[12]  *BOP Implementing Modified Operations,* Federal Bureau of Prisons (last visited May 7, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp.

[13]  *Id.*

[14]  Walter Pavlo, *COVID-19 and Natural Disaster Combine for Tragedy at Bureau of Prisons Facility in Estill, SC*, Forbes (Apr. 28, 2020), https://www.forbes.com/sites/walterpavlo/2020/04/28/covid-19-and-natural-disaster-combine-for-tragedy-at-bureau-of-prisons-facility-in-estill-sc.

Dr. Schlifstein is currently serving his sentence.[15]  Some 900 inmates were recently transferred to USP Lewisburg,[16] which only further exacerbates Dr. Schlifstein's potential exposure.  Indeed, USP Lewisburg recently had its first confirmed case among staff,[17] and counsel understands that on May 5, 2020, an inmate was removed by ambulance with symptoms of COVID-19.  Indeed, one court has even recently recognized, in granting an application for compassionate release for a defendant incarcerated at USP Lewisburg, that "[USP] Lewisburg is particularly ill-equipped to contain the virus at this time." *United States v. Pabon*, 17 Cr. 165-1(ABB), 2020 WL 2112265, at *5 (E.D. Pa. May 4, 2020).

### D.     Dr. Schlifstein's Significant Medical Issues

Dr. Schlifstein is 51 years old and suffers from several health conditions that make him particularly vulnerable to severe illness and potentially death from COVID-19.  He has severe sleep apnea and suffers from high blood pressure and high cholesterol, and is overweight. Though the medical community is still learning about the disease, based on available information, each of those conditions pose a significant risk of complications to Dr. Schlifstein should he contract the virus.

*First*, Dr. Schlifstein has severe sleep apnea, which has been associated with higher mortality rates for those infected with COVID-19. *See* Dr. Carl Rosenberg, *Coronavirus Concerns for Patients with Sleep Apnea*, Mar. 22, 2020, *available at* https://www.sleephealthsolutionsohio.com/blog/coronavirus-sleep-apnea-cpap-therapy/ ("Coronavirus has caused a higher mortality rate for patients with underlying health conditions,"

---

[15]  USP Lewsiburg, https://www.bop.gov/locations/institutions/lew/

[16]  https://keller.house.gov/media/in-the-news/massive-inmate-transfer-valley-federal-penitentiary-underway

[17]  Marcia Moore, *Lewisburg penitentiary staffer with COVID-19 was among workers sent to NYC*, The Daily Item, May 5, 2020, https://www.dailyitem.com/coronavirus/update-lewisburg-penitentiary-staffer-with-covid-19-was-among-workers-sent-to-nyc/article_ca992b2e-8e63-11ea-91d9-5756d504b015.html

. . . includ[ing] chronic conditions like . . . sleep apnea."); Dr. Kelley Mingus, *Sleep Apnea May Increase Coronavirus Risk*, Mar. 16, 2020, *available at* https://kelleymingus.com/2020/03/16/sleep-apnea-may-increase-coronavirus-risk/ (explaining that "patients with sleep apnea are at an elevated risk of contracting COVID-19 while they sleep, because the virus is transferred via a process called aspiration" and individuals with sleep apnea aspirate while they sleep making it more likely that the virus will be easily transported from their nose and throat to their trachea").

Dr. Schlifstein's condition is particularly severe and requires that he use a type of ventilator, called a continuous positive airway pressure (CPAP) machine, when he sleeps to ensure that his airways remain open. *See* PSR ¶¶ 111-112. Dr. Schlifstein has been observed to stop breathing up to 90 times in an hour while sleeping. This severe respiratory condition, which may have been an undiagnosed, hereditary condition that led to his brother's sudden death in 2014, likewise puts Dr. Schlifstein in a category for severe complications if he contracted COVID-19, a respiratory disease.

It is crucial that CPAP devices be cleaned and disinfected properly "to ensure that the pressurized air does not facilitate the pathway for contagions." *See* Rosenberg, *Coronavirus Concerns for Patients with Sleep Apnea*. That is particularly true for a pathogen such as coronavirus, but Dr. Schlifstein has difficulty sufficiently cleaning the CPAP machine while incarcerated and it is nearly impossible for him to do so when lockdown measures are put in place, as they are currently at USP Lewisburg —putting him at an even higher risk. *See* Rosenberg, *Coronavirus Concerns for Patients with Sleep Apnea* ("To minimize exposure to the lungs, the CPAP machine should also be cleaned well and often, even daily.").

CPAP devices can also spread COVID-19 by disseminating droplets through the air, which increase the risk that Dr. Schlifstein will spread the virus to others sleeping nearby in the regrettable situation where Dr. Schlifstein should become ill. *See* Kenny Walter, *Concern over Sleep Apnea and Coronavirus Transmission*, Mar. 24, 2020, *available at* https://www.mdmag.com/medical-news/sleep-apnea-treatment-coronavirus-droplets ("a continuous positive airway pressure (CPAP) device can potentially spread the droplets further than normal breathing, putting loved ones at an increased risk of developing the virus"); *Sleep Centers of Middle Tennessee Releases Guidelines For CPAP Use During COVID-19 Outbreak In The United States*, Mar. 15, 2020 *available at* https://sleepcenterinfo.com/blog/guidelines-for-cpap-use-during-covid-19-outbreak-in-the-united-states/ (explaining that "the exhalation port on a CPAP mask . . . may release infected respiratory secretions under increased pressure and with increased humidity which could greatly increase the radius of the exposed area" and if the mask is not properly sealed to a sick person's face, "[t]his could potentially spread the virus throughout a room or small residence"). For this reason, it would not only be safer for Dr. Schlifstein, but also for his fellow inmates if he were transferred to home confinement.

Other judges in the Southern District of New York have granted compassionate release and modified a sentence based on at least in part based on a defendant's sleep apnea and high cholesterol during the COVID-19 pandemic. *See, e.g.*, *United States v. Gross,* 15 Cr. 769(AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release of defendant suffering from sleep apnea and high cholesterol among other conditions); *United States v. Scparta*, 18 Cr. 578(AJN), 2020 WL 1910481, at *2 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release to 55-year old male who suffers from high blood pressure, high cholesterol, sleep apnea, and hypertension); *United States v. Smith*, 12 Cr. 133 (JFK), 2020 WL

1849748, at *1, 4 (S.D.N.Y. Apr. 13, 2020) (finding 62-year-old defendant with high cholesterol, among other conditions, eligible for compassionate release).  Other federal courts have found similarly. *See, e.g.*, *United States v. Powell*, 94 Cr. 0316(ESH) (D.D.C. Mar. 24, 2020), ECF No. 94 (court recommendation to BOP to immediately place defendant, who is 55-years old and suffers from several respiratory problems (including asthma and sleep apnea) into home confinement to serve the remainder of his prison term)

*Second,* Dr. Schlifstein suffers from high cholesterol and high triglycerides, PSR ¶¶ 111-112, both of which are known risk factors for the virus. Serena Gordon, *Who's Most at Risk From Coronavirus,* Mar. 18, 2020, https://www.usnews.com/news/health-news/articles/2020-03-18/whos-most-at-risk-from-coronavirus (doctor noting that "we should be broad with what we consider cardiovascular [heart and blood vessel] diseases and cerebrovascular [brain and blood vessel] diseases, that put people at risk" and listing high cholesterol and high blood pressure as two risk factors).  Indeed, on the New York State Department of Health report as of May 6, 2020, hyperlipidemia (or high cholesterol) is the third highest comorbidity that makes people more vulnerable to the severe form of COVID-19. New York State Department of Health, Fatalities (last visited May 6, 2020) (showing 4,340 deaths with comorbidity of hyperlipidemia) https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no. Dr. Schlifstein has been taking two medications for high cholesterol and triglycerides. PSR ¶111.

*Third*, Dr. Schlifstein's weight puts him at higher risk for severe illness from COVID-19. Counsel understands that Dr. Schlifstein currently has a body mass index of over 35.  The CDC has specifically indicated that people at any age with severe obesity are considered high risk. *See* CDC    COVID-19    Guidance,    available    at    https://www.cdc.gov/coronavirus/2019-

ncov/hcp/underlying-conditions.html (noting that individuals with severe obesity are those with a BMI greater than or equal to 40). Though Dr. Schlifstein is not severely obese, his weight does put him into a larger risk category.

In combination, it is clear that Dr. Schlifstein's numerous medical issues, and the medications that he takes for these conditions, result in him being at a greater risk for severe COVID-19 infection as compared to a typical inmate.

### E. Dr. Schlifstein's Application to the BOP

On April 7, 2020, in light of the COVID-19 pandemic and Dr. Schlifstein's significant medical issues, the undersigned counsel filed an administrative relief request on his behalf with the Warden of the USP Lewisburg seeking compassionate release on the same grounds as submitted herein (Spiro Decl., Ex. 1). On April 15, counsel followed up via email and was told by an executive assistant as USP Lewisburg that they were "reviewing every inmate housed at USP Lewisburg and SCP Lewisburg in accordance with the CARES Act and guidance received from Attorney General Barr" (Spiro Decl., Ex. 2). As of May 7, 2020, the Warden has not, however, issued a decision or substantive response on Dr. Schlifstein's request.

On May 6, 2020, Dr. Schlifstein's counsel communicated with the Government to ascertain its position on this motion. The Government declined to take a position until receiving and reviewing the present application.

### ARGUMENT

## I. THIS COURT SHOULD EXERCISE ITS EXPANSIVE AUTHORITY UNDER THE FIRST STEP ACT TO REDUCE DR. SCHLIFSTEIN'S SENTENCE

Pursuant to the First Step Act of 2018, a sentencing court "may reduce the term of imprisonment":

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The U.S. Sentencing Commission provides that "extraordinary and compelling reasons" involve (A) the medical condition of the defendant, (B) the age of the defendant, (C) his or her family circumstances, and (D) any "other" extraordinary and compelling reason that the Director of the Bureau of Prisons determines. See U.S.S.G. § 1B1.13 Application Note 1 (2018).[18] By its plain terms, the Court has expansive authority to reduce or modify a sentence based on the First Step Act. Unsurprisingly, many courts in Circuit have exercised that authority to grant compassionate release and reduce sentences for defendants based on the extraordinary and compelling reasons of inmates' medical conditions, as well as the severe health risks posed by the COVID-19 pandemic and their continued confinement.[19]

Likewise, pursuant to 18 U.S.C. § 3624(c)(1), the BOP

shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare

---

[18]  Most courts to consider the issue have held that district courts can reduce sentences for reasons "consistent" with Commission guidance, and that courts now stand in place of the Bureau of Prisons for purposes of the Guidelines' "catch-all" provision in U.S.S.G. § 1B1.13 Application Note 1(D). Courts therefore have expansive authority to define what constitutes "extraordinary and compelling" reasons to reduce a sentence. Based on this authority, district courts have reduced sentences for a variety of reasons—even if the reductions are opposed by the Bureau of Prisons and even if the reasons do not fit neatly into the Sentencing Commission's specifically enumerated reasons. *See, e.g., United States v. Redd*, 97 Cr. 06(AJT), 2020 WL 1248493, at *8 n.18 (E.D. Va. Mar. 16, 2020) (collecting cases).

[19]  *See, e.g., United States v. Kataev*, 16 Cr. 763-05(LGS), 2020 WL 1862685, at *1 (S.D.N.Y. Apr. 14, 2020); *United States v. Resnick*, 14 Cr. 810(CM), 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020); *United States v. Perez,* 17 Cr. 513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020); *United States v. Dana*, 14 Cr. 405 (JMF) (S.D.N.Y. Mar. 31, 2020), ECF No. 108; *United States v. Campagna*, 16 Cr. 78 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020); *United States v. Marin*, 15 Cr. 252 (PKC) (E.D.N.Y. Mar. 30, 2020), ECF Nos. 1325–26.

for the reentry of that prisoner into the community. Such conditions may include a community correctional facility [halfway house].

This authority "may be used to place a prisoner in home confinement." 18 U.S.C. § 3624(c)(2). Such release is not discretionary—these provisions command that the BOP "shall" endeavor to release prisoners to halfway houses or home confinement when they become eligible. *Id.* ("The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."); *see id*. § 3624(c)(1).

While the BOP's ability to place a prisoner in home confinement was previously limited to the shorter of six months or 10% of a prisoner's sentence under section 3624(c)(2), this authority was broadened by the recently enacted CARES Act. CARES Act § 12003(b)(2) Because of the recent declaration of a state of emergency, which has materially affected the functioning of the BOP, the BOP is now authorized to "lengthen the maximum amount of time …to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code." CARES Act § 12003(b)(2). Given the BOP's implementation of an action plan that entails the restriction of inmates to their assigned cells or quarters and widespread limitations on their movement, and Attorney General Barr's recently directives to BOP to "prioritize" the use of its authority "to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic,"[20] it would be entirely appropriate for this Court to modify Dr. Schlifstein's sentence to now include a period of home confinement.

---

[20] Mem. from Att'y Gen. William P. Barr to Dir. of Fed. Bureau of Prisons (Mar. 26, 2020), https://www.justice.gov/file/1262731/download.

## II.     DR. SCHLIFSTEIN HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES UNDER 18 U.S.C. § 3582(C)(1)(A)

Dr. Schlifstein filed his petition with the USP Lewisburg Warden on April 7, 2020 (Spiro Decl., Ex. 1). Though the Court has the authority to waive the requirement under the First Step Act, normally a defendant can only seek to reduce his term of imprisonment and seek compassionate release by recourse through the courts after either (1) the BOP declines to file such a motion on his behalf; or (2) there has been of lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. *See* 18 U.S.C. § 3582(c)(1)(A). Here, Dr. Schlifstein has waited the statutory 30 days after sending the request to the warden but has not received any response and has therefore complied with the statutory exhaustion requirement.

## III.     "EXTRAORDINARY AND COMPELLING" REASONS WARRANT A REDUCTION AND MODIFICATION IN DR. SCHLIFSTEIN'S SENTENCE TO HOME CONFINEMENT

Based on the requirements of section 3582(c)(1)(A) and the section 3553(a) factors, Dr. Schlifstein is the model applicant for compassionate release under these circumstances, and his sentence of imprisonment should be reduced to time served with the remainder of his term to be served in home confinement.

*First,* as discussed above, because of his medical conditions, Dr. Schlifstein faces a heightened risk of contracting COVID-19 and suffering life-threatening consequences and complications if he does contract this disease. He is over 50 years old and has several of the characteristics that public health authorities have identified as particular risk factors—most notably his sleep apnea, high cholesterol, and weight. Indeed, his sleep apnea and his use of the CPAP machine could unintentionally potentially place others at high risk as well.

*Second,* Dr. Schlifstein is currently confined in an institution that is highly susceptible to rapid, widespread infection. The recent confirmed case of COVID-19 among a staff member at

USP Lewisburg suggests that widespread infection could be imminent.  Moreover, due to the conditions of his confinement, it is impossible for him to avoid contact with infected areas or people, and he cannot take basic steps to avoid the disease, like self-isolating or using protective gear or personal hygiene supplies, much less properly clean his CPAP machine.

*Third,* Dr. Schlifstein is an aged, non-violent offender who does not present any danger to the community, nor a risk of reoffending if released.  Dr. Schlifstein was convicted of accepting kickbacks (in the form of speaking fees) in return for prescribing a pain medication, but his medical license (and his ability to prescribe any medications at all) has been rendered inactive as a result of his conviction, not to mention that his ability to engage in speaking engagements and his board certifications have now been revoked.  His incapacitation at a doctor means he is highly unlikely to recidivate.  As noted in the PSR, "his involvement in the instant offense appears uncharacteristic." PSR at 32.  Moreover, Dr. Schlifstein has complied with all conditions of his release, and was permitted to self-surrender, which he did as directed.  Indeed, even at sentencing, the Court noted that his 24-month sentence was based primarily on "general deterrence" because it is "what doctors in the future will take into account" before deciding whether to join a similar conspiracy, and not based on his actual danger to society." Dr. Schlifstein has served almost 2.5 months of his short 24-month sentence, which is sufficient for purposes of punishment and general deterrence, particularly in light of the ongoing pandemic. Nor is there need for further specific deterrence because Dr. Schlifstein has taken full responsibility for his prior criminal conduct, has served a sufficient term of incarceration, and is remorseful for his actions.

Even in this quickly developing situation, courts have already begun to recognize that the COVID-19 pandemic justifies release to lower the danger faced by those detained, especially for

low-risk inmates such as Dr. Schlifstein. *See United States v. P. Hernandez*, 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020) (granting bail application, pursuant to § 3142(i), of defendant with asthma and high blood pressure that placed him "at a substantially heightened risk of dangerous complications should he contract COVID-19").  Courts have not limited this grant of relief to those pending sentencing, and have granted compassionate release to those who have already been sentenced. *See United States v. Pabon*, 17 Cr. 165-1, 2020 WL 2112265, at *1 (E.D. Pa. May 4, 2020) (granting sentence reduction and release from Lewisburg Camp where Pabon was not a danger to community and suffered from risk factors associated with COVID-19); *United States v. Muniz*, 2020 WL 1540325, at *1-2 (S.D. Tex. Mar. 30, 2020) (finding extraordinary and compelling reasons under § 3582(c)(1)(A)(i) to grant reduction in sentence in light of heightened risk to inmate presented by COVID-19); *United States v. Campagna*, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (same); *United States v. D. Hernandez*, 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *4 (S.D.N.Y. Apr. 2, 2020) (same).

Indeed, the Court has already taken actions to address the COVID-19 pandemic for Dr. Schlifstein's co-defendants in this criminal case by postponing sentencing for defendant Freedman sine dine, ECF No. 283; granting Freedman's bail application, ECF No. 291, and even extending defendant Burducea's surrender date until December 1, 2020 based on the Court's concern for "unnecessarily increasing the federal prison population during the COVID-19 pandemic," ECF No. 287.

If the Court grants Dr. Schlifstein motion to reduce his sentence and transfer him to home confinement, Dr. Schlifstein would go immediately to his longtime home in New York City where he has a one-bedroom, one-bathroom apartment with a den space.  He is single and lives alone so there would be no issue with a 14-day quarantine period.  At home, he would be able to

follow CDC Guidelines for self-quarantine by people who actually have COVID-19, which are even more stringent than the guidelines for those who may have been exposed.  Pretrial Services also noted prior to his sentencing that his apartment did not have any safety concerns or issues. PSR ¶ 108.

Given the highly infectious nature of COVID-19, the inability in a correctional facility to practice any of the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission, and the fact that Dr. Schlifstein suffers from ailments that have already been identified as "high risk," this Court should find that Dr. Schlifstein's legitimate medical risk is a sufficiently extraordinary and compelling basis for granting compassionate release.  The Court did not sentence Dr. Schlifstein to suffer such consequences.  He deserves mercy and immediate compassionate release to home confinement.

## CONCLUSION

For the foregoing reasons, Dr. Schlifstein respectfully requests that this Court grant this Motion and order his immediate release from imprisonment and serve the remainder of his term of imprisonment on home confinement under the least restrictive conditions permissible under the law, which will effectively allow him to finish the remaining portion of his sentence in an environment in which he will be able to protect himself from exposure to COVID-19.

DATED:     New York, New York                Respectfully submitted,
           May 8, 2020


                                    By:  _/s/ Alex Spiro_____
                                        Alex Spiro
                                        Alexander P. Wentworth-Ping
                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
                                        51 Madison Avenue, 22nd Floor
                                        New York, New York  10010-1601
                                        Telephone:  (212) 849-7000
                                        alexspiro@quinnemanuel.com
                                        alexwentworthping@quinnemanuel.com

                                        *Attorneys for Dr. Todd Schlifstein*